**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-183-DLB**

**MOHAMED MKHAITIR**                                                **PETITIONER**


**v.**                          **MEMORANDUM OPINION AND ORDER**


**MARKWAYNE MULLIN, et al.**                              **RESPONDENTS**

**\* \* \* \* \* \* \* \* \* \***

## I.   INTRODUCTION

This matter is before the court on Petitioner Mohamed Mkhaitir's Petition for Writ

of Habeas Corpus (Doc. # 1).  Respondents[1] having filed their Response (Doc. # 6) and

Petitioner having filed his Reply (Doc. # 7), the matter is now ripe for review.  For the

following reasons, the Court will **grant** the Petition.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Mohamed Mkhaitir is a native and citizen of Mauritania who entered the

United States without inspection on or about November 7, 2022.  (Doc. # 1 ¶¶ 19–20).

Upon entering the United States, he was apprehended by U.S. Customs and Border

Patrol ("CBP") and issued a Notice to Appear before an immigration judge ("IJ").  (Doc. #

6 at 1–2; Doc. # 6-1).  He was thereafter released and within a year of his arrival, he

---

[1]      Petitioner files this action against Markwayne Mullin, Secretary, U.S. Department of
Homeland Security ("DHS"); Samuel Olson, Field Office Director, Chicago Field Office,
Immigration and Customs Enforcement ("ICE") (collectively, the "Federal Respondents); and Marc
Fields, Warden, Kenton County Detention Center (collectively, with the Federal Respondents,
"Respondents").  (*See* Doc. # 1 ¶¶ 16–18).

applied for asylum.  (Doc. # 1 ¶ 20).  Mkhaitir, his wife and his one-year-old child have resided in Oak Lawn, Illinois since their arrival to the United States.  (*Id*. ¶ 22).

Mkhaitir was arrested by ICE on February 16, 2026 following a traffic stop.  (*Id*. ¶ 19).   He  was  served  with  an  I-200  "Warrant  for  Arrest  of  Alien,"  authorizing  his apprehension and detention pursuant to 8 U.S.C. § 1226.  (Doc. # 6-3).  Mkhaitir received a bond hearing before an IJ on March 5, 2026, where the IJ denied bond based on the finding that Mkhaitir did not adequately prove that he is not a flight risk.  (*Id*. ¶¶ 24, 26). Mkhaitir remains in ICE custody to date and is currently being detained at the Kenton County Detention Center in Covington, Kentucky.  (*Id*. ¶¶ 18, 27).

Mkhaitir filed his Petition for Writ of Habeas Corpus on April 27, 2026.  (Doc. # 1). In  his  Petition,  Mkhaitir  requests  that  this  Court  order  his  immediate  release  or, alternatively, a constitutionally adequate bond hearing where the government bears the burden of proof by clear and convincing evidence that Petitioner is a flight risk or danger to the community.  (*Id*. at 8).  On April 28, 2026, this Court directed Respondents to respond to the Petition.  (Doc. # 5).  The Federal Respondents filed their Response on May 12, 2026 (Doc. # 6) and Respondent Fields failed to file a timely Response.  Mkhaitir filed his Reply on May 15, 2026.  (Doc. # 7).  Accordingly, the Petition is ripe for the Court's review.

## III.   ANALYSIS

Mkhaitir alleges that his Fifth Amendment Due Process rights are being violated. (Doc. # 1 ¶ 5).  In particular, Mkhaitir alleges that the IJ placing the burden of proof of him violated his right to due process.  (*Id*. ¶ 37).  Accordingly, he argues he is entitled to release or a bond hearing where the government bears the burden of proof.  (*Id*. at 8).

Respondents, on the other hand, offer two theories of why Mkhaitir's detention is proper. First, they argue that this Court cannot review the IJ's bond decision, pursuant to 8 U.S.C. § 1226(e).  (Doc. # 6 at 2–3).  Further, while recognizing the Sixth Circuit's recent decision in *Lopez-Campos et al. v. Raycraft et al.*, No. 25-1965, 2026 WL 1283891 (6th Cir. May 11, 2026), Respondents maintain that Petitioner was not entitled to a bond hearing because he is an applicant for admission under 8 U.S.C. § 1225(a).  (*Id.* at 3 n.3).

Since the parties disagree on the applicable statute, the Court will first address which detention statute—§ 1225 or § 1226—applies to Mkhaitir's detention.

### A.     Relevant Framework

At its core, habeas provides "a remedy for unlawful executive detention."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008).  And this relief is available to "every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  A district court may grant a writ of habeas corpus to any person who shows that he is detained within the court's jurisdiction in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3).  The Supreme Court has recognized that habeas relief extends to noncitizens.  *See Rasul v. Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States . . . Section 2241, by its terms, requires nothing more.").

Enacted in 1952, the INA consolidated previous immigration and nationality laws and now contains "many of the most important provisions of immigration law."  U.S. Citizenship and Immigration Services, Immigration and Nationality Act (July 10, 2019), https://www.uscis.gov/lawsandpolicy/legislation/immigrationandnationalityact#:~:text=Th e%20Immigration%20and%20Nationality%20Act,the%20U.S.%20House%20of%20Rep

3

resentatives.   Relevant to Mkhaitir's Petition, Congress has established two statutes, codified in Title 8, which govern detention of noncitizens pending removal proceedings— 8 U.S.C. §§ 1225 and 1226.

The first statute, 8 U.S.C. § 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."   It states, in pertinent part:

**(b)    Inspection of applicants for admission**

**(2)    Inspection of other aliens**

**(A)    In general**

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of this title.

8 U.S.C. § 1225(b)(2)(A).  Important to note, for purposes of this provision, "an alien who is an applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).

The second provision at issue, 8 U.S.C. § 1226, is titled "Apprehension and detention of aliens" and reads:

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1)    May continue to detain the arrested alien; and

(2)    May release the alien on—

4

(A)    Bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . .

8 U.S.C. § 1226(a).

Section 1226(c) of the INA was amended by Congress in January 2025 with the enactment of the Laken Riley Act, which added a new subsection under Section 1226(c), requiring mandatory detention in certain circumstances.  Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025).  The amendment added a two-step process, in which the Attorney General must detain a noncitizen if

(1) they are inadmissible because they are in the United States without being admitted or paroled, obtained documents or admission through misrepresentation or fraud, or lacks valid documentation and

(2) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

*Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *3 (W.D. Ky. Sep. 19, 2025) (quoting U.S.C. §§ 1226(c)(1)(E)(i)-(ii)).  Neither of these subsections applies to Petitioner Mkhaitir.

On May 11, 2026, the Sixth Circuit issued its decision in *Lopez-Campos et al. v. Raycraft et al.*, wherein it determined that § 1226 is the properly applied statutory provision for detaining noncitizens like Mkhaitir who arrived in the United States without inspection.  No. 25-1965, 2026 WL 1283891, at *13 (6th Cir. May 11, 2026).  In its opinion, the Sixth Circuit affirmed the judgments of four district courts below, determining that the "text, canons, and past practice" of two statutes all support the conclusion that the petitioners were not subject to the mandatory detention provisions of § 1225.  *Id*. at *6. Accordingly, the Circuit rejected the government's position that § 1225 governs noncitizen

5

detainees, concluding that "[t]o hold otherwise would subject long-term law-abiding residents in the United States. . . to the hardship of mandatory detention without due process." *Id*. at \*13.

The same reasoning applies here. Mkhaitir has been in the United States for nearly two years. (Doc. # 1 ¶¶ 20–22). After being detained at the border he was immediately released on his own recognizance after DHS determined he was an alien present in the United States who had "not been inspected and admitted or paroled." (Doc. # 6-1) (internal quotations omitted). Accordingly, pursuant to the Sixth Circuit's recent opinion in *Lopez-Campos*, the Court concludes that § 1226 governs Mkhaitir's detention.

## B.      Constitutionally adequate bond hearing

Because Mkhaitir is being detained pursuant to § 1226(a), the Court must determine whether his due process rights were violated when the IJ placed the burden on him, rather than the government, in his May 2026 bond hearing. While Respondents note that there was "plenty of evidence to support the denial" of bond, they do not deny that the IJ placed the burden on Mkhaitir. (Doc. # 6 at 2). Instead, Respondents hang their hats on 8 U.S.C. § 1226(e), which Respondents contend precludes this Court from reviewing an IJ's discretionary decisions. (*Id*. at 2–3). This Court disagrees.

As a preliminary matter, this Court must first address Respondents' argument that "this Court lacks jurisdiction to review the sufficiency of the bond hearing under 8 U.S.C. § 1226(e), which precludes review of the IJ's discretionary decision to deny Petitioner bond[.]" (*Id*. at 2). While true, district courts do not have jurisdiction to review discretionary decisions made by an IJ, "this limitation applies only to 'discretionary' decisions about the 'application' of § 1226 to particular cases. It does not block lawsuits

over the 'extent of the Government's detention authority under the "statutory framework" as a whole.'" *Nielsen v. Preap*, 586 U.S. 392, 401 (2019) (quoting *Jennings v. Rodriguez*, 583 U.S. 295-96 (2018)). Here, Mkhaitir is not challenging the IJ's discretionary decision to deny him bond. Rather, he is arguing that an immigration bond hearing pursuant to § 1226(a) that places the burden of proof on the noncitizen to show they are not a danger or a flight risk is constitutionally inadequate. (Doc. # 1). Thus, this Court is not barred by § 1226(e) because "[t]his type of constitutional claim 'falls outside the scope of § 1226(e)' because it is not a matter of the IJ's discretionary judgment." *Alvarez Figueroa v. McDonald*, 680 F. Supp. 3d. 18, 22 (D. Mass May 14, 2018). Therefore, this Court maintains jurisdiction over Mkhaitir's habeas petition.

It is not disputed that § 1226(a) is silent as to what burden of proof applies in bond hearings, and who bears that burden. Following the 1996 enactment of the IIRIRA, a noncitizen seeking release bore the burden of "demonstrat[ing] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). It is important to note, however, that this regulation applied *only* to the custody determination by the arresting officer. Nevertheless, the BIA soon adopted that standard and applied it to 1226(a), requiring a noncitizen detained pursuant to § 1226(a) to demonstrate "to the satisfaction of the immigration judge that he or she merits release on bond." *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *see also Matter of Fatahi*, 26 I. & N. 791, 795 n. 3 (B.I.A. 2016) (stating that the BIA has "consistently held that aliens have the burden to establish eligibility for bond while proceedings are pending.").

However, pursuant to the Supreme Court's recent decision in *Loper Bright Enter. v. Raimondo*, courts "need not defer to any agency interpretation of law just because a statute is ambiguous." 603 U.S. 400, 412-413 (2024). The Court acknowledges and considers the BIA's interpretation. Nevertheless, for the sake of completeness, this Court will look towards other courts for additional guidance on the matter. While this issue has not yet been addressed by the Sixth Circuit, there is persuasive authority from various circuit courts to guide this Court in its analysis.

The Court first turns to *Hernandez-Lara v. Lyons,* 10 F.4th 19 (1st Cir. 2021), a First Circuit Court of Appeals case with facts similar to the ones before this Court. In *Hernandez-Lara,* the petitioner, a native and citizen of El Salvador, entered the United States in 2013 and was detained in 2018. 10 F.4th at 23. One month after being detained, she was granted a custody redetermination hearing in which the IJ denied bond after placing the burden on the petitioner. *Id*. at 24. The petitioner subsequently filed a petition for writ of habeas corpus, arguing that her Fifth Amendment rights were violated when the IJ placed the burden on her, rather than the government. *Id*. at 25.

In its analysis, the First Circuit determined that the three-part balancing test in *Mathews v. Eldridge*, 424 U.S. 893 (1976), was the appropriate standard to use in answering whether the "Due Process clause of the Fifth Amendment entitles a noncitizen detained pursuant to Section 1226(a) to a bond hearing at which the government bears the burden of proving by clear and convincing evidence that the noncitizen is dangers or a flight risk." *Id*. at 27. Beginning with the first factor, private interest, the court concluded that there was "no question" that the petitioner suffered a substantial deprivation of liberty when she was "incarcerated alongside criminal inmates . . . for over ten months." *Id*. at

28.  The Court additionally reasoned that because the "exact length of detention under section 1226(a) is impossible to predict and can be quite lengthy" the first factor weighed heavily in the petitioner's favor.  *Id*. at 29.

The second factor, risk of erroneous deprivation, was also found to weigh in petitioner's favor.  *Id*. at 30.   The court considered that because noncitizens (1) have no right to counsel; (2) experience difficulty in gathering evidence on their behalf; (3) often lack full proficiency in English; (4) are not familiar with immigration law and procedures; and (5) face the difficulty of proving a negative, the "detainee often starts out behind the eight ball in a bond proceeding, and the opportunities for prejudicial error abound."  *Id*. at 30-31.  As a result, the court reasoned, "the odds of error in the weighing of such evidence (or its absence) are likely reduced by placing the burden on the government, as in virtually all other instances of proposed lengthy detention."  *Id*. at 31.

Finally, as to the third factor, government's interest, the court acknowledged that "prompt executing of removal orders is a legitimate governmental interest."  *Id*. at 32.  However, the court clarified that "[w]hat is at stake . . . is not the power of the government to detain noncitizens who may cause harm or flee during removal proceedings, but rather who should bear the burden of proving noncitizens pose a danger or risk of flight."  *Id.*  The Court considered various factors such as interest in obtaining records, impact on society, and general financial costs.  *Id*. at 33.  "In short" the court concluded, "given the risk that the current procedures lead to many instances of needless detention, entailing substantial social and financial costs, the public interest in placing the burden of proof on the detainee is uncertain at best, and may well be negative."  *Id*.  Thus, the First Circuit held that "the government must bear the burden of proving

9

dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)." *Id*. at 39.

In *Velasco Lopez v. Decker*, the Second Circuit conducted a similar analysis. 978 F.3d 842 (2d. Cir. 2020). There, the petitioner received a custody redetermination hearing upon detention, however he was denied bond after the burden was placed on him. *Id*. at 847. The petitioner was then detained for an additional fourteen months before filing a petition for a writ of habeas corpus. *Id*. Similar to the First Circuit, the Second Circuit concluded that the *Mathews* test governed its analysis. *Id*. at 851. After analyzing all three factors, the court reasoned that "shifting the burden of proof to the Government to justify continued detention promotes the Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Id*. at 854. Thus, the Second Circuit "conclude[d] that the district court appropriately addressed the [due process] violation by ordering a new hearing at which the Government was called upon to justify continued detention." *Id*. at 855.

The Court notes that district courts all around the country have similarly concluded that the burden of proof to show that the noncitizen is a danger or flight risk should be on the government. *See Azalyar v. Raycraft*, No. 1:25-cv-916, 2026 WL 30741, at *5 (S.D. Ohio Jan. 2, 2026) ("Respondents must provide a custody redetermination hearing at which the government bears the burden of justifying [the petitioner's] continued detention"); *Darko v. Sessions*, 342 F. Supp. 3d. 429, 435 (S.D.N.Y. Oct. 19, 2018) ("Since *Jennings*, a number of district courts have taken up the question left open by the Supreme Court, and there has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden

10

of proving that such detention is justified."); *Singh v. Barr*, 400 F. Supp. 3d. 1005, 1018 (S.D. Cal. Aug. 30, 2019) ("The Court agrees with the reasoning of its sister courts and concludes that the Fifth Amendment's Due Process Clause requires the Government to bear the burden of proving by clear and convincing evidence, that continued detention is justified at § 1226(a) bond redetermination hearing."); *Alvarez Figueroa*, 680 F. Supp. 3d. at 26 ("[T]he Constitution requires placing the burden of proof on the government in § 1226(a) custody redetermination hearings."); *Riestra v. FNU LNU*, No. 2:26-cv-006360-KG-JHR, 2026 WL 905500, at * 2 (D.N.M. Apr. 2, 2026) ("Petitioner's prolonged detention violates the Fifth Amendment's Due Process Clause, and therefore she is entitled to a bond hearing where the Government bears the burden of proof."); *Rajesh v. Barr*, 420 F. Supp. 3d 78, 87-88 (W.D.N.Y. Oct. 29, 2019) ("The Court agrees with the district court cases holding that allocating the burden to a noncriminal alien to prove he should be released on bond under § 1226(a) violates due process because it asks '[t]he individual . . . to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the [Government]'" (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979))).

The Court finds the above case law persuasive. Petitioner's private interest in remaining free from detention is substantial, and the current procedures create a substantial risk of harm. Specifically, as seen here, noncitizens may be subject to indefinite detention. Finally, the government's interest does not outweigh the risk of indefinite detention. While the Court certainly acknowledges that the government has a legitimate interest in ensuring a noncitizen's appearance and protecting its citizens, as numerous courts have concluded, shifting the burden imposes minimal additional

11

hardships on the government.  Moreover, as some courts have acknowledged, shifting the burden may further support the government's interests. *See Hernandez-Lara*, 10 F.4th at 33 ("[L]imiting the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention."); *Velasco Lopez*, 978 F.3d at 855 ("When the Government incarcerates individuals it cannot show to be a poor bail risk for prolonged periods of time, as in this case, it separates families and removes the community breadwinners, caregivers, siblings and employees. The Government articulates no public interest that any of this serves and we see none.").

The Court acknowledges the circuits that have come to the opposite conclusion, Specifically, the Ninth and Fourth Circuits have both concluded that placing the burden of proof on a noncitizen to prove they are not a danger nor a flight risk does not violate the Due Process Clause of the Fifth Amendment.  *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022); *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022).  However, these decisions provide, at most, persuasive authority.  The Court agrees with the First and Second Circuit's *Mathews* analysis, and in the absence of an authoritative decision from the Sixth Circuit Court of Appeals, respectfully declines to adopt the Ninth Circuit's holding in *Rodriguez Diaz* or the Fourth Circuit's holding in *Miranda*.

Accordingly, the Court concludes that Mkhaitir's Fifth Amendment Due Process right was violated when the IJ placed the burden on him in his custody redetermination hearing.  While Petitioner has requested immediate release, the Court finds that the appropriate remedy is granting his alternate request for a constitutionally adequate bond hearing.  Additionally, consistent with the other courts who have concluded that the

12

government must bear the burden of proof, this Court concludes that a clear and convincing standard "provides the appropriate level of procedural protection." *Velasco Lopez*, 978 F.3d at 856.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1)   Mkhaitir's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)   Respondents are **ORDERED** to **immediately release** Petitioner, or in the alternative, provide him with a **constitutionally adequate bond hearing in which the government bears the burden of proof** under 8 U.S.C. § 1226(a) **within seven (7) days of the date of this Order**; and

(3)   Respondents shall file a Status Report with this Court **on or before June 3, 2026** to certify compliance with this Order.  The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 20th day of May, 2026.



Signed By:

*David L. Bunning*   DB

Chief United States District Judge

G:Judge-DLB\DATA\ORDERS\Cov2026\26-183 MOO re Habeas Petition.docx